IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re: }
}
SHARLON CARR, } Case No. 16-40976-JJR7
}
Debtor. }

**OPINION AND ORDER ON DEBTOR'S**
**APPLICATION TO HAVE FILING FEE WAIVED**

The debtor filed an application to waive her chapter 7 filing fee (Doc. 2), and the chapter 7 trustee objected (Doc. 12). If the court approves the debtor's application, the trustee's meager $60 minimum fee, otherwise included in the filing fee, will not be paid, and he will likely work for free.[1] If the court does not approve the application for fee waiver, the debtor must pay the filing fee of $335 in one lump sum or in installments, and the trustee will at least receive his minimum fee. *Cf.* 28 U.S.C. § 1930(a); Rule 1006.[2] Thus, because the trustee has a pecuniary interest in the filing fee being paid, he has standing to challenge the debtor's fee waiver application.[3]

Section 1930(f)(1) of title 28 sets out a two-pronged test to determine whether a debtor qualifies for the waiver. The court may waive the filing fee otherwise due in an individual's chapter 7 case if (1) the debtor's income is "less than 150 percent of the income official poverty line (as defined by the Office of Management and Budget . . .) applicable to a family of the size

---

[1] Based on the debtor's schedules, this appears to be a "no asset" case, so if the debtor's application is approved, there will be no assets for the trustee to liquidate to pay his fee or make a distribution to creditors.

[2] The Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, is referred to herein as the "Code," and the "Rules" and a "Rule," are references, respectively, to the Federal Rules of Bankruptcy Procedure and a particular Rule thereof.

[3] The debtor has not challenged the trustee's standing.

1

involved *and* (2) [the debtor] is unable to pay that fee in installments." *Id. (*emphasis added).[4] Applications seeking a waiver of the filing fee are made on Official Form 103B. This court uses the information on the completed Official Form and the debtor's schedules to determine whether a debtor satisfies the conditions imposed by § 1930(f)(1) for the waiver. On rare occasions the court may require additional evidence, including the debtor's testimony.

Following this court's recent opinions and orders entered in *In re Clyde L. Davis, Jr.*[5] there has been a noticeable increase in chapter 7 cases filed in the Eastern Division of this District in which debtors' counsel filed applications for a waiver of their clients' filing fees pursuant to § 1930(f)(1). While counsels' efforts to save their chapter 7 clients the expense of paying the filing fees are commendable, the court is concerned that the motivation driving the upswing in fee waiver applications may, in some cases, be a misunderstanding of the court's ruling in *Davis*. Thus, the court hopes to accomplish two things with this opinion: First, the court will attempt to sort out and correct any misperception of why the debtor's attorney in *Davis* was required to reimburse filing fees paid by some of his chapter 7 clients. Second, the court

---

[4] The income prong of the test is the easier of the two to decide assuming there are no uncertainties regarding the debtor's income and family size. A debtor's ability to pay the filing fee in installments, the second prong of the test, should be determined by considering the totality of the debtor's financial circumstances, for which there are no hard and fast standards. This court considers, among other factors, the debtor's assets, both exempt and nonexempt, a nonfiling spouse's assets, proposed reaffirmations, claims that will not be discharged (e.g., domestic support obligations, taxes, student loans), underlying causes for seeking bankruptcy relief, recently incurred debts, and history of previous bankruptcy cases. Some of those factors may reflect more on the debtor's good faith than his ability to pay, but good faith should be a consideration in virtually all aspects of a case.

[5] Case No. 13-40938 (Bankr. N.D. Ala. 2013); *aff'd in part and rev'd in part, Cobb v. Corbett*, Case No. 1:15-cv-00868-AKK (N.D. Ala. 2016); *see* this court's opinions at Docs. 54, 101, 119, 170, and orders at Docs. 55, 102, 120, 171.

2

will make findings and reach conclusions with regard to the filing fee waiver application made by the debtor in this particular case.

The court's orders issued in *Davis* required debtors' counsel to reimburse filing fees paid by those of his clients who, according to their schedules, satisfied the income test for a waiver, although no determination was ever made by the court of whether those debtors nonetheless had the ability to pay filing fees in installments. Counsel in *Davis* never mentioned to his clients that their limited incomes likely qualified them for a waiver of the filing fee, because truthful answers to the questions posed in the filing fee waiver applications would have disclosed the unscheduled debt for his attorney's fees and would have risked exposure of his clandestine postdated-check-attorney-fee-collection-scheme. In *Davis*, counsel's failure to seek filing fee waivers for potentially eligible debtors was a deliberate, systematic omission, and was an integral part of concealing his attorney fee collection scheme from the court, the trustee, the bankruptcy administrator, creditors, and others. This bankruptcy court and, on appeal, the district court, found that the undisclosed fee collection scheme was in violation of the Code, Rules, and ethical standards.[6] Reimbursement of the filing fees to those debtors who satisfied the income test was a

---

[6] The district court affirmed the bankruptcy court's decision with regard to the imposition of sanctions, but remanded the case with instructions for this court to make a determination of whether debtor's counsel had the ability to reimburse filing fees paid by those debtors whose incomes were below the § 1930(f)(1) threshold. The remand instructions did not require the bankruptcy court to determine whether those debtors had the ability to pay filing fees in installments, precisely because the sanctioned conduct was not counsel's failure to file for waivers in the abstract; the sanctioned conduct was counsel's failure to file for waivers as part of a deliberate effort to continue the concealment of his improper attorney fee collection arrangement.

On remand, and after an evidentiary hearing, the court found counsel did in fact have the ability to pay for the reimbursement of filing fees to his clients, and so ordered. Counsel and the bankruptcy administrator informed the court that funds sufficient to pay all sanctions were deposited by counsel in a reimbursement account for disbursement to those debtors identified in the court's previous orders as being entitled to refunds of their attorney fees, and where applicable, NSF check charges and case filing fees.

3

sanction imposed, not simply because counsel never filed fee waiver applications, but because counsel's failure to even consider submitting such applications for his lowest income clients was part and parcel of his deliberate failure to comply with the attorney fee disclosure requirements of the Code and Rules.

The court encourages debtors' attorneys to file applications for a waiver of filing fees when they believe their chapter 7 clients satisfy the two-prong test set out in § 1930(f)(1). Nonetheless, the court emphasizes that it has no intention of, *sua sponte*, examining whether chapter 7 debtors are entitled to filing fee waivers under § 1930(f)(1) even when their schedules indicate they likely pass the income test. In the *Davis* case, the bankruptcy administrator moved the court to examine transactions and consider disgorgement of attorney's fees, and the evidence presented made it impossible for the court to ignore that debtors' counsel failed to seek filing fee waivers because to have done so would have disclosed an inappropriate attorney-fee-collection-scheme. Absent extraordinary circumstances such as the improprieties discovered in *Davis,* whether to apply or not apply for a waiver of filing fees is a decision that should be made exclusively by the debtor and his counsel, even when the debtor's income is less than the § 1930(f)(1) threshold.[7] Next, the court will turn its attention to the instant case.

---

[7] The debtor's attorney in the instant case (not debtor's counsel in *Davis*) argued credibly that, although she filed a filing fee waiver application for her client in this case, if she continues to file applications for debtors seeking waivers, and the trustee continues to object, thereby requiring her to attend a hearing on the objections and present evidence supporting the waivers, she must consider increasing the fees she charges her clients in anticipation of the trustee's objections – a Hobson's choice perhaps. Nonetheless, as mentioned above in the text, the decision of whether or not to seek a waiver of the filing fee is a matter that should be left to the debtor and her counsel.

A recent article published in the AMERICAN BANKRUPTCY INSTITUTE JOURNAL might foster a misunderstanding of this court's premise for imposing sanctions in *Davis*. Richard H. Thomson, "Filing Fee Waivers: Be Careful of What You Don't Ask For," AMERICAN BANKRUPTCY INSTITUTE JOURNAL, July 2016, Vol. XXXV, No. 7, p. 20 ("Incredibly, counsel is facing sanctions for failing to advise his clients to file in federal court declarations executed

under the penalty of perjury that they were unable to make payments that they, in fact, could and did make." *Id.* at 69). The article does not accurately reflect the reasons this court imposed sanctions in *Davis,* and may raise an unwarranted concern that this court intends to sanction attorneys whenever they fail to seek filing fee waivers for debtors who can pass the income prong of the fee waiver test, even without considering whether the debtors have the ability to pay the fees in installments. The interpretation of *Davis* espoused in the article is founded on a flawed premise—that the delivery of postdated checks to pay both filing and attorney's fees, followed by counsel's incremental monthly payment of filing fees out of his office account without regard to whether any particular debtor's checks were paid by the bank, was tantamount to a demonstration of those debtors' ability to pay filing fees in installments. Counsel in *Davis* made the same argument, which the court addressed and rejected in its opinions. In hopes of avoiding further confusion, and for the benefit of attorneys practicing in the Eastern Division, the court will reiterate its three controlling findings that caused the court to include reimbursement of filing fees in the sanctions imposed in *Davis*.

First, the failure to apply for filing fee waivers was not an exercise of counsel's discretion in *Davis*, but was part of the cover-up of his inappropriate and undisclosed attorney-fee-collection-scheme involving at least 292 cases, 159 of which on their face satisfied the income test for a filing fee waiver. He employed his Byzantine collection scheme in virtually all his chapter 7 cases – the only requirement being that the debtors have a checking account. Counsel made no effort to determine if any debtor would have the wherewithal to cover his checks after his case was filed. In fact, counsel kept no records regarding which debtors were covering their checks and which were not. Counsel paid the filing fees in installments based upon *his* ability to pay them each month, with no consideration whatsoever of whether any *debtor* would have had the ability to pay them and without regard to whether a debtor's check had bounced. Second, according to counsel's own records, 368 of those checks were not paid due to insufficient funds, thus negating the argument that delivery of the checks (or counsel's payment of the monthly installments regardless of whether checks cleared the bank) demonstrated an ability of the debtors to pay the filing fee in installments. Finally, even if one accepts the flawed premise that counsel's eventual payment of the filing fees in installments out of his office account without regard to whether any particular debtor's check cleared the bank, *a fortiori* supported an ability of the debtors to pay their filing fee in installments, it would be impossible to conclude that counsel in *Davis* did not allow his clients to sign fee waiver applications out of an ethical fear of suborning them to commit perjury rather than in furtherance of concealing his postdated check scheme. Consider that counsel routinely had his debtors sign declarations confirming the accuracy of their schedules, under penalty of perjury. Yet those schedules purposefully failed to list counsel as a creditor holding a $1,500 prepetition claim. In that same vein, counsel filed Rule 2016(b) compensation disclosures that were never amended, as mandated by that Rule, to disclose his receipt, postpetition, of checks totaling $1,500 intended to pay his attorney's fees and expenses. Likewise, counsel never mentioned his anticipated receipt of debtors' postdated checks in his written services and fee agreements required by Code § 528(a).

Finally, while it may be true that "the bankruptcy system is designed to be self-sustaining and funded through the allocation of court fees", R. Thomson at 68, the burden to make up any funding shortfall should not be presumptively shifted onto the backs of individual chapter 7 debtors whose incomes are less than 150% of the poverty line – the poorest debtors seeking relief under title 11 – whom Congress specifically made eligible for filing fee waivers under §

5

Official Form 103B is simple enough, and in Part 1, it asks a series of questions to help determine a debtor's eligibility for a fee waiver. The first question asks, "What is the size of your family?" and defines family as including the debtor, the debtor's spouse, and any dependents listed on Schedule J. The debtor in the instant case is not married, but has a dependent son, although he does not live with her. Question 2 asks the amount of the family's average income, which is described as "average monthly net income (take-home pay)" plus any non-cash governmental assistance such as food stamps. In this case, the debtor receives no governmental assistance.

The debtor's "monthly income" of $1,861 as shown on her Schedule I, line 10, was the same amount she listed on Form 103B as her "family's average monthly net income." This amount was determined on Schedule I by starting with the debtor's gross monthly wages of $2,736, which was then reduced by payroll taxes of $443, insurance of $77, and domestic support obligations (presumably for her dependent son) of $355, to arrive at her monthly net income of $1,861.

The penultimate question in Part 1 of Form 103B asks whether the debtor expects her "family's average monthly net income will increase or decrease by more the 10% during the next 6 months?" to which she answered no. The final question invites the debtor to explain "why she is unable to pay the filing fee in installments within 120 days" and provide any "additional circumstances that cause [the debtor] to not be able to pay [the] filing fee in installments . . . ." The debtor provided no explanation or additional circumstances supporting her inability to pay

---

1930(f)(1). Notably, that legislation does not include a requirement that the applicant show extraordinary circumstances to qualify for a waiver, neither does it mention "adequate funding for the courts" as a factor for the court to consider in ruling on fee waiver applications.

6

the filing fee in installments, but she did attach copies of her Schedules I and J that disclosed her monthly income and expenses.

Part 2 of Form 103B asks the debtor to list her estimated average monthly expenses, and she listed the same amount shown on her Schedule J: $1,858. And she answered "no" to other questions that, if answered in the affirmative, might demonstrate an ability to pay the fee in installments. Part 3 asks a series of questions about the debtor's property, which she left blank, but she attached copies of her Schedules A and B that disclosed no real estate and no substantial unencumbered or nonexempt personal property. Finally, Part 4 inquires about whom the debtor has paid, promised to pay, or expects to pay for assisting her with her bankruptcy case.[8] The debtor disclosed she paid her attorney $900, and she had neither promised to pay anyone else nor did she expect to pay any more with respect to her case.

The trustee objected to the debtor's application on grounds that the income shown on the debtor's income tax returns and on her Statement of Financial Affairs ("SOFA") disclosed a monthly income approximately $800 higher than was disclosed on Schedule I and on Form 103B. At the hearing on August 11, 2016, the court admitted Trustee's Exhibits 1 and 2, the debtor's tax returns for 2014 and 2015, which show average monthly gross income of $2,633.50 (2014) and $2,726 (2015), respectively. The SOFA showed that the debtor had earned $14,229 during the present year before her case was filed in early June 2016, equating to an average monthly gross income of $2,845 (averaged over 5 months) before deductions. This figure is slightly higher than the gross monthly income of $2,736 shown on Schedule I. The debtor's

---

[8] These are the questions that, if answered accurately by the debtors in *Davis*, would have disclosed those debtors still expected to make postpetition payments to their attorney, and would have exposed the anticipated delivery of their postdated checks to their attorney.

Case 16-40976-JJR7    Doc 42    Filed 08/19/16    Entered 08/19/16 11:58:11    Desc Main
Document    Page 7 of 8

deductions on Schedule I, which the trustee did not challenge, total $875 per month, leaving a net monthly income of $1,970 when using the SOFA gross income. Net monthly income of $1,970 is slightly higher than the $1,861 shown on Schedule I and Form 103B, but is still below the waiver threshold of $2,002.50 for a family of two.

As explained above, the test for waiver of the filing fee has two prongs. In addition to the income test, which the court finds the debtor has satisfied, she must also demonstrate she is "unable to pay that fee in installments." 28 U.S.C. § 1930(f)(1). The debtor testified that she postponed filing her bankruptcy case for several months while she saved the money needed to pay her attorney's fees of $900. An attorney fee of $900 is reasonable and well within the norm for the Eastern Division of this District. According to the debtor's testimony, she simply could not afford to pay the filing fee in installments or otherwise. The trustee offered no evidence to rebut that testimony which the court finds credible, especially in light of the debtor's income, expenses and assets shown on her schedules. The debtor's schedules do not disclose any assets, exempt and nonexempt, that she could liquidate to pay the filing fees, and reaffirmation of her car loan is necessary for her transportation to her place of employment.

Accordingly, for the reasons stated above, the court finds the debtor's net monthly income is below the applicable poverty line, and that she cannot afford to pay the fee in installments. Therefore, the Debtor's Application to Have Chapter 7 Filing Fee Waived is GRANTED, and the trustee's objection is OVERRULED.

So done and ordered this 19th day of August 2016.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE